J-A12001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LUIS D. RIQUELMY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMARIS M. FRED | : | No. 2924 EDA 2025 |

Appeal from the Order Entered October 16, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  0C2500243

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED JULY 13, 2026**

Luis D. Riquelmy ("Father") appeals *pro se* from the final child custody order that, *inter alia*, awarded Damaris M. Fred ("Mother") temporary sole legal and physical custody of their daughter, E.R.F., born in August 2021 ("Child"), from October 2025 until February 2026, after which Father and Mother had shared physical and legal custody.  Because Father's claims merit no relief, we affirm.

The relevant facts and procedural background of this appeal are as follows.  Father and Mother separated when Child was nine-months old, and they had an informal agreement to share alternating weeks of physical custody.  **See** N.T., 10/16/25, at 7-8, 77. In January 2025, Mother filed a petition for a protection from abuse ("PFA") order against Father and a temporary PFA order issued that same month.  **See id**. at 33-36, 73-74.

_____

[*] Former Justice specially assigned to the Superior Court.

Father had physical custody of Child when he learned about the temporary PFA order, and he, thereafter, did not return Child to Mother or communicate with Mother about Child. *See id*. at 33-36. Father and Mother both filed custody complaints in February 2025.

In June 2025, the PFA court issued a final one-year PFA order in favor of Mother and against Father. Mother's final PFA order allowed contact through "AppClose" for the limited purpose of child custody. *Id*. at 33-34, 62, 75-76, 94-95. Father continued to deny Mother access to Child, and there was no direct communication between Mother and Father about custody through AppClose. *See id*. at 34, 76. Father enrolled Child in a new daycare/school without telling Mother or giving her an address of Child's new school. *See id*. at 22, 76-77. In September 2025, Father filed a PFA petition against Mother. *See id*. at 12-13. A PFA court issued a temporary order on Father's petition but had not issued a final order before the custody hearing. *See id*. at 13.

On October 16, 2025, the trial court held the custody hearing. Father appeared *pro se* and Mother appeared with counsel. Father acknowledged that he and Mother previously had an informal agreement for shared physical custody of Child after their separation and that Child had been living with him exclusively since January 2025. *See id*. at 7-8. Father explained he kept Child from Mother beginning in January 2025, because Mother started to withhold food stamps for Child, failed to pay for Child's previous daycare/school, filed her PFA petition against him, requested wellness checks

on him and Child, and claimed tax benefits for Child, when he usually took those benefits. *See id*. at 19-20, 128-29. Father also suggested that Child had been exposed to sexually inappropriate influences when with Mother and Mother's other son, although he acknowledged this did not play a role in his decision to keep Child from Mother. *See id*. at 11-12, 128-29. Mother, through counsel, stipulated that Child told Father Mother's son kissed her on the mouth, but Mother's counsel noted there was no timeframe for that statement. *See id*. at 47. Father later clarified Child told him that kissing incident occurred when Child was two years old. *See id*. 131.

Father also testified about the incident in September 2025 ("the September 2025 incident"), which prompted him to file his PFA petition against Mother. Father recounted that Mother's boyfriend, who had a pistol in his pocket, entered a restaurant where Father was with Child, threatened Father, and afterwards returned to Mother's car, where he passed the pistol to Mother, and Mother put the pistol in her purse. *See id*. 12-13, 50-53.[1] Father asserted Mother unreasonably delayed when he asked her for Child's

_____

[1] The trial court viewed photographs admitted as exhibit F-2, as well as a video of this incident on Father's cellphone. *See* N.T., 10/16/25, at 50-51, 51-53. However, the court did not accept a flash drive Father prepared for the hearing, stating that the court could not use the flash drive on its computer unless it had been screened for viruses before the hearing. *See id*. at 50-51. Father did not object or request the court to consider more specific portions of the video after the trial court described the video as "it's a video of a man who is proclaimed to be [Mother's] boyfriend coming into a restaurant saying some words and going out" and "the same man getting into the front seat of a car on the driver's side, a person who looks like [Mother] getting into the passenger seat." *Id*. at 52-53.

medical insurance card. *See id*. at 86-88. Father testified he could not directly contact Mother about Child after the PFA court issued a temporary PFA order in January 2025, and he believed that Mother had petitioned for the PFA order as a trap to have him arrested.[2] Father insisted Mother made false statements in court proceedings and others to Child's medical providers to be manipulative, "play . . . games[,]" and cast him as a bad father. *Id*. at 40-41, 99-100.

Mother, in her counseled direct examination and during cross-examination by Father, conceded payments to Child's previous daycare/school were late. *Id*. at 73. Mother testified she corrected that situation as soon as she found out about the overdue payments. *See id*. Mother explained she filed her PFA petition in January 2025 because Father had been harassing her about the overdue payment and appearing at her workplace. *See id*. at 73-74. Mother also acknowledged she stopped giving Father her food stamp card because those benefits were for all her children. *See id*. at 110-14. With respect to Father's claims about delays in giving Father Child's medical insurance card, Mother testified she sent Father a picture of the card but had to order a new physical card. *See id*. at 86-88.

Mother denied Father's assertion her son kissed Child on the lips, although she admitted her son had lists of sexually inappropriate pick-up lines

---

[2] Father, during his cross-examination of Mother, elicited testimony that despite her final PFA order, Mother contacted Father about Child, Father refused her requests to return Child and instead demanded she drop her PFA petition against him. *See* N.T., 10/16/25, at 122-23.

in his bedroom. *See id*. at 127-33. Mother testified she did not believe Father's allegations her son was acting inappropriately toward Child because Father never liked her son and was attempting to find ways to separate her from Child. *See id*. at 132.

As to Father's claim that Mother's boyfriend threatened him in September 2025 incident, Mother conceded she was in the restaurant's parking lot at that time but asserted she had no idea what her boyfriend was doing inside the restaurant. *See id*. at 123-27. Mother denied she or her boyfriend had guns. *See id*. at 83-84.

At the conclusion of the hearing, the trial court announced its findings and conclusions of law as follows:

> Okay. I'm going to go ahead and put the factors on the record, and then give you an order.
>
> The first factor is, which party is more likely to ensure the safety of the child.
>
> I think, in spite of what is happening between the parents, [C]hild is safe with each of you.
>
> The next factor is abuse, which has to do with violent or assaultive behavior, PFAs, criminal activity, *et cetera*.
>
> I want to say that that factor favors [M]other. There is a finding of abuse after a hearing, which resulted in a final PFA against [Father] on behalf of [Mother]. I will note, however, that [Mother] is still offering [Father] time with [C]hild.
>
> So, although there is that final PFA and a finding of abuse, I do not find that either party fears for the child's safety with the other party.
>
> I think [Father's] fears for the [C]hild's safety with [Mother] are highly exaggerated, not credible, and I am in no way fearful of [C]hild being in [Mother's] care.

Parental duties was neutral for most of [C]hild's life. They are only now not neutral because of [Father's] very upsetting withholding of [C]hild from [M]other, from [M]other for ten months.

Prior to that, I believe the parties shared parental duties equally and, basically, on a week on, week off basis, which includes making and taking [C]hild to doctors' appointments, *et cetera*.

Moving on to stability, that favors [Mother]. [Father] we don't know where -- or [Mother] is not aware of where [C]hild's been for ten months, which is incredibly troubling.

Where [C]hild is in school, we had to find that out today, and [Father] lives in a studio with two beds, and at [Mother's] house, [C]hild has her own space.

Moving on to siblings, that favors [Mother]. There are siblings in [Mother's] house, extended family, and those siblings have a relationship with [C]hild. I'm sure they miss her.

Moving on to extended family. That's neutral. Both parties have extended family in [C]hild's life.

Child's preference is not applicable because she's too young to testify.

The residences are close enough, both being in Philadelphia. Child care is covered by both; so that's neutral.

Drug and alcohol use. I find that [Father's] testimony about [Mother's] prior drug use was not credible, and that [Mother] credibly testified that she doesn't use any drugs or alcohol.

I'll note for the record that the parties were both drug tested in court at a prior listing. At that listing, mom was negative and dad was positive for marijuana; although, dad does say he has a medical marijuana card and is currently on suboxone.

So, let me add that that factor favors [M]other.

Mental health is neutral. There's no mental health issues. Again, [Mother] testified credibly that she has none. [Father] assumes she does for reasons unknown that make no sense to me.

The frustrating part about this case is that [Father] has withheld [C]hild from [M]other for ten months. I cannot justify that, and I don't understand how he justifies that in any way.

- 6 -

> The PFA was highly inappropriate. There was a finding of abuse against [Father]. There is not yet a finding of abuse against [Mother]. The fact that he held [C]hild from [Mother] for these ten months, to me, has been the opposite of what is in her best interest, is absolutely not in her best interest in any way to keep [C]hild from [M]other like that when she was used to seeing [M]other 50 percent of the time.
>
> [Mother] testified credibly that she begged to have [C]hild back, that she had to send wellness checks.

N.T., 10/16/25, at 136-39. The trial court entered the final custody order that granted Mother sole legal and physical custody until February 2026, after which Mother and Father would share legal and physical custody with custody exchanges to occur at a police station.

Father filed a reconsideration motion, to which he attached several exhibits not presented at the custody hearing, including screenshots from the video that Father asserted showed Mother's boyfriend with a pistol in his pocket during the September 2025 incident. The trial court denied the reconsideration on November 17, 2025. Father timely appealed from the entry of the custody order, and pursuant Pa.R.A.P. 1925(a)(2)(i), contemporaneously filed a five-issue statement of errors complained of on appeal.[3]

_____

[3] Father's Rule 1925(b) statement contained the following issues:

> 1. The trial court awarded temporary sole custody to [M]other despite evidence of risks, including a recent incident involving [Mother], her boyfriend, and a weapon for intimidation while the child was present.

*(Footnote Continued Next Page)*

The trial court filed a Rule 1925(a) opinion. On that same day Father, without seeking prior approval from the court, filed a nine-issue amended Rule 1925(b) statement. The trial court did not address that filing and, instead, sent correspondence to this Court, copied to the parties, requesting that the amended Rule 1925(b) statement not be considered.

Before addressing the issues raised in this appeal, Father's filing of an amended Rule 1925(b) statement requires discussion. It is well settled that a party may not simply file an amended Rule 1925(b) statement to preserve an issue for review. **See Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 803 n.2 (Pa. Super. 2007) (noting that where the appellants did not seek leave from the trial court to file amended Rule 1925(b) statements, trial court acted properly in not considering those statements, and this Court may decline to consider them); **see also Sullivan v. Skelton**, 351 A.3d 242, 2025 WL 3296477, at *4 (Pa. Super. 2025) (non-precedential memorandum); **accord**

_____

2. The trial court failed to properly consider the safety factors under 23 Pa.C.S.[A.] § 5328(a)(2), (a)(2.1), and (a)(14) regarding abuse, weapons, and risk of harm.

3. The trial court ignored or gave improper weight to the existing temporary [PFA o]rder that I hold against [M]other.

4. The court's award of sole custody for four months is not in the child's best interest and exposes the child to continued danger, while also removing her from a safe environment with [F]ather.

5. The court erred by dismissing my safety concerns as non-emergent despite evidence of weapon intimidation and hostile conduct in front of the child.

Rule 1925(b) Statement, 11/17/25, at 1-2.

- 8 -

Pa.R.A.P. 1925(b)(2)(ii) (outlining procedures for requesting an extension of time to file a Rule 1925(b) statement when a transcript is necessary to develop the statement). Because Father filed his amended Rule 1925(b) statement without seeking an extension of time or leave of court, the trial court properly refused considering that statement, and this Court will not address any new issues raised therein. *See Hess*, 925 A.2d at 803 n.2; *Sullivan*, 2025 WL 3296477, at *4.[4]

Mindful that Father cannot now pursue new issues raised in his amended Rule 1925(b) statement, we set forth his questions involved in this appeal as they were stated, or are fairly included, in his first Rule 1925(b) statement:

> 1. Whether the trial court abused its discretion and deprived [Father] of a fair hearing by awarding [Mother] temporary sole custody despite credible evidence of safety risks, including an incident involving [Mother], her boyfriend, and a firearm in the presence of [Child].
>
> 2. Whether the trial court failed to properly consider and weigh the statutory factors under 23 Pa.C.S.[A.] § 5328(a)(2), (a)(2.1), and (a)(14) regarding abuse, weapons, and risk of harm.
>
> 3. Whether the trial court gave insufficient weight to [Father's] existing [t]emporary [PFA] order . . ..

_____

[4] Specifically, Father waived his issues concerning the trial court's alleged conduct at the hearing, which, he asserted, impeded his full and fair opportunity to present his full case by including those issues for the first time in his amended Rule 1925(b) statement. Additionally, aside from waiver based on Rule 1925, Father did not specifically object at the time of the hearing, and he, therefore, failed to preserve those issues for that reason. *See* Pa.R.A.P. 302(a). Last, to the extent Father alleges the trial court engaged in post-hearing irregularities that impeded his opportunity for a fair appeal, we discern no basis for such allegations. For these reasons, we will not address Father's arguments at pages 27-31 of his brief.

4. Whether the trial court erred as a matter of law by dismissing or minimizing [Father's] firsthand testimony regarding weapon intimidation . . ..

\* \* \* \*

6. Did the trial court fail to consider the statutory best-interest factors by ordering an abrupt and prolonged separation of [C]hild from [Father], failing to consider longstanding involvement with [C]hild, his consistent and responsible parenting, without any findings that such separation is necessary.

7. In making custody decision, did the trial court fail to consider the minor child has lived with [Father] exclusively custody of the child for nine (9) months due to previous court orders . . ..

Father's Brief at 4-5.[5]

The following principles govern this Court's review of a custody order:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Layton-Herron v. Litke***, 352 A.3d 510, 520-22 (Pa. Super. 2026).

_____

[5] Father's arguments do not align with his questions presented. ***See*** Pa.R.A.P. 2119(a). However, this does not impede appellate review.

The paramount concern in custody cases is the child's best interest. ***See***

***C.G. v. J.H***., 193 A.3d 891, 909 (Pa. 2018). The issue is decided on a case-by-case basis considering all relevant factors and giving weighted consideration to those which affect the child's safety. ***See*** 23 Pa.C.S.A. § 5328(a). At the time of the October 2025 hearing and trial court decision in the case *sub judice*, the following version of section 5328(a) applied:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
>
> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (2.2) Violent or assaultive behavior committed by a party.
>
> (2.3) The level of cooperation and conflict between the parties, including:
>
>> (i) which party is more likely to encourage and permit frequent and continuing contact between the child and the other party or parties if contact is consistent with the safety needs of the child; and
>>
>> (ii) the attempts by a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's good faith and reasonable effort to protect the safety of a child or self shall not be considered evidence of unwillingness or inability to cooperate with the other party. A party's reasonable concerns for the safety of the

- 11 -

child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(3) A willingness and ability of a party to prioritize the needs of the child by providing appropriate care, stability and continuity for the child, considering the parental duties performed by the party on behalf of the child in the past and whether the party is willing and able to perform the duties in the future, and attend to the daily physical, emotional, developmental, educational and special needs of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) Deleted by 2025, June 30, P.L. 18, No. 11, § 1, effective in 60 days [Aug. 29, 2025].

(6) The child's sibling and other familial relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) to (10) Deleted by 2025, June 30, P.L. 18, No. 11, § 1, effective in 60 days [Aug. 29, 2025].

(11) The proximity of the residences of the parties.

(12) Each party's employment schedule and availability to care for the child or ability to make appropriate child-care arrangements.

(13) Deleted by 2025, June 30, P.L. 18, No. 11, § 1, effective in 60 days [Aug. 29, 2025].

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a) (eff. Aug. 2025).

This Court has recognized temporary awards of custody raise concerns about mootness. ***See E.B. v. D.B.***, 209 A.3d 451, 461 (Pa. Super. 2019) (discussing an interim custody order); ***see also C.H.L. v. W.D.L.***, 214 A.3d 1272, 1280 (Pa. Super. 2019) (discussing a PFA order's custody provision).

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

***M.B.S. v. W.E.***, 232 A.3d 922, 927 (Pa. Super. 2020) (citation omitted). This Court may raise the issue of mootness *sua sponte*. ***See E.B.***, 209 A.3d at 461.

Despite the general rule regarding mootness,

> this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

***E.B.*** 209 A.3d at 461 (citation omitted).

Even when this Court cannot "unring the bell" of a temporary decision, this Court may, when appropriate, review the procedures involved in a temporary custody decision. ***See id***. at 462 (reviewing an interim custody order "because of the importance of ensuring that trial courts follow correct procedures when entering interlocutory custody orders that have significant

impact on the final custody decision"); *see also C.H.L.*, 214 A.3d at 1280 (reviewing "the proper procedures" for a temporary PFA custody provision "because [it] affected the non-custodial parent's right to access to the child and impacted the *status quo* that would later set the stage for the full custody trial"); *but compare M.O. v. F.W.*, 42 A.3d 1068, 1073 (Pa. Super. 2012) (addressing the merits of a temporary suspension of visitation) *with Bailer v. Bailer*, 281 A.3d 1085, 2022 WL 2255941, at *3 (Pa. Super. 2022) (non-precedential memorandum) (concluding an award of temporary legal custody to vaccinate children was moot following the administration of the vaccine).

In his first four questions, Father claims the trial court failed to consider and weigh properly his evidence, pursuant to section 5328(a)(2) and (a)(2.1), about abuse and safety concerns concerning Child.[6]  Specifically, Father contests the trial court's finding that Child was safe with Father and Mother. *See* Father's Brief at 14; *see also* N.T., 10/16/25 at 136.  Father claims the trial court disregarded the evidence about inappropriate behaviors occurring in Mother's home or involving Mother, including her son's kissing Child on the lips, and the September 2025 incident.  *See* Father's Brief at 15-16, 21-22. Moreover, Father asserts the trial court failed to consider Mother's inappropriate response to those allegations.  *See id*. at 16-18.  Father

_____

[6] This corresponds to Father's first, third, and fourth argument sections of his brief.  Although Father's second question also refers to section 5328(a)(14), relating to drug and alcohol abuse, Father does not develop any argument about drug and alcohol abuse in his brief.  Therefore, we deem any issue concerning section 5328(a)(14) abandoned in this appeal.  *See In re K.K.*, 957 A.2d 298, 303 (Pa. Super. 2008).

contends the trial court improperly regarded his fears for Child's safety as "highly exaggerated" or "not credible" and ignored his testimony and evidence, including the temporary PFA order he obtained against Mother, that Mother's boyfriend had been armed during the September 2025 incident. *See id*. at 15-16, 18, 20; *see also* N.T., 10/16/25, at 137. He insists the trial court should have questioned or inquired further about his belief that Mother's boyfriend was armed when he approached Father and Child. *See* Father's Brief at 20-21.

The trial court rejected most of these claims, explaining:

Contrary to Father's claim, the credible testimony of Mother, the credible testimony of Father, and the evidence presented led this [c]ourt to determine that . . . Child is not at risk of harm in Mother's care. The [c]ourt found that the safety factor favored Mother.

The [c]ourt explicitly considered the allegations of abuse and the temporary [PFA o]rder issued against Mother. Under [section] 5323(e), this [c]ourt is required to consider whether a party or household member has perpetrated abuse. Here, the [c]ourt found no credible evidence that Mother's behavior posed a current threat to [C]hild. This [c]ourt acknowledged the historical PFA [orders] but noted that there was no evidence of ongoing abuse or safety concerns regarding the child with Mother. [Father's] temporary PFA order does not include protection from abuse for [C]hild, nor does it include custody. Thus, the [c]ourt determined that [Father's temporary PFA order] did not in and of itself preclude Mother from spending time with . . . Child.

This [c]ourt also considered the testimony and evidence [Mother final PFA order] against Father . . .. Mother's final PFA order did not address temporary custody[] but included that the parties may have civil communication via AppClose and communicate only regarding custody. Again, the Court acknowledged the historical PFA [order] but noted that there was no evidence of ongoing abuse or safety concerns regarding [C]hild.

- 15 -

The [c]ourt noted[, on the record]: "There was a finding of abuse against [Father]. There is not yet a finding of abuse against [Mother]. The fact [Father] held the child from [Mother] for these ten months . . . has been the opposite of what is in her best interest, is absolutely not in her best interest to keep [C]hild from [M]other like that when she was used to seeing [M]other 50 percent of the time." Neither party brought forth an argument or allegation relating to consideration involvement with protective services at any time.

\* \* \* \*

[Father] provided the [c]ourt evidence of pictures regarding [September 2025 incident] in [exhibit] F-2, noted by Mother's counsel that "none of the pictures show any sign of a pistol or weapon" and the Court provided that "[t]he pictures speak for themselves. That's fine." The [c]ourt allowed Father to play a video on his phone and noted that the video showed ". . . a man who is proclaimed to be [Mother's] boyfriend coming into a restaurant and saying some words, then going out." Then in a separate video noted for the record that "I am looking at a video . . . of that same man getting into the front seat of a car on the driver's side, a person who looks like [Mother] getting into the passenger seat." Specifically, the Court noted in weighing the safety factor "I think [Father's] fears for the child's safety with mom are highly exaggerated, not credible, and I am in no way fearful of . . . [C]hild being in [Mother]'s care". Therefore, Father's safety concerns were considered and deemed non-emergent based on the evidence and testimony provided.

Trial Court Opinion, 12/15/25, at 5-6, 8 (record citations omitted).

Following our review, we discern no basis to disturb the trial court's analysis regarding Father's allegations of safety risks as between Mother and Child. To the extent Father asserts that the trial court abused its discretion when weighing his evidence about the September 2025 incident, the court's findings have record support, and the court did not arbitrarily or capriciously refuse to weigh Father's evidence about that incident in the manner Father

would have liked. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (noting that it "is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case"); *see also Klos v. Klos*, 934 A.2d 724, 728 (Pa. Super. 2007) (noting this Court's role "does not include making independent factual determinations" and, therefore, we must defer to the trial court's resolution of credibility and weight issues). We note the trial court did not address Father's assertions about the kissing incident and Mother's son having sexually inappropriate notes. *See* N.T., 10/16/25, at 41-43, 131. However, nothing in the record suggests the trial court abused its discretion when finding, at the hearing, Father's concerns about Child's safety with Mother appeared "highly exaggerated," particularly when Child's statement about the kissing incident occurred when she was two years old, approximately two years before the instant proceedings, and that incident played no role in Father's decision to withhold Child from Mother. *See id*. at 128-29, 131, 137; *see also Klos*, 934 A.2d at 728. Thus, Father's claims that the trial court abused its discretion when assessing the abuse and safety factors under sections 5328(a)(2) and (a)(2.1) merit no relief.

In his last two issues, Father contends the trial court abused its discretion by finding his taking of exclusive custody of Child from January to October 2025 was unjustified, and by failing to consider Child's best interests

when awarding Mother temporary sole physical and legal custody.[7] Father asserts the trial court improperly characterized his withholding of Child from Mother as "alienation." Father's Brief at 19. Father claims he was acting "in strict compliance" with the PFA orders and the trial court mistook his "protective withholding" of Child due to his safety concerns for "intentional alienation." *Id*. at 19, 22. Father further contends that he had good faith reasons for withholding child because Mother did not provide him with Child's food stamps, did not timely pay for Child's prior daycare/school, and delayed when he asked her for Child's insurance card. *See id*. at 25. Father insists Mother demonstrated a pattern of being irresponsible and an inability to coparent and then filed her PFA petition, which left him with no way to contact or communicate with her without being arrested. *See id*. at 26. Father asserts the trial court also failed to consider how it was in Child's best interests, or the emotion and mental health trauma Child would suffer, when ordering his complete removal from Child's life for four months when he had exclusively cared for Child for nine months and Child had not seen Mother during that time. *See id*. at 22-23.[8]

The trial court explained its decision as follows:

_____

[7] This corresponds to Father's and second, fifth, sixth, and seventh arguments.

[8] Father adds allowing Mother to change Child's school and requiring custody exchanges after February 2026 occur at a police station was not in Child's best interests. However, he did not identify those issues in his Rule 1925(b) statement. Therefore, these issues are waived. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017).

Here, the [c]ourt determined that Father willfully withheld the child from Mother for ten months. Father testified credibly that he has been withholding Child from Mother since the filing of the PFA [petition by] Mother against Father, with Father openly stating, "I kept our child from her for the simple fact she filed a PFA". Father also stated in [c]ourt, after being excused from the [c]ourtroom after the factors were put on the record, that he withheld the child because "I had no choice. If I would have gave her to her, I would have gotten locked up for even trying to contact her". This is both factual and legal misstatement.

Both Mother and Father testified credibly that Mother had not seen [C]hild since January [2025] as Father had been withholding. Parental alienation is a severe form of non-cooperation when a parent undermines the child's relationship with the other parent. As a result, and through its discretion with regard to issues of credibility and weight of the evidence, the [c]ourt ordered temporary sole physical and sole legal custody to Mother and ordered the Child to go with Mother for a period of four months to reunify and re-bond with the Child due to the alienation caused by the withholding by Father for [ten] months. The [c]ourt has broad discretion to craft remedies, and unjustified interference with parenting time. Through the [c]ourt's discretion, the [c]ourt held that this was in . . . Child's best interest based on the evidence and testimony under 23 Pa.C.S. § 5328.

Trial Court Opinion, 12/15/25, at 9-10 (record citations omitted).

Father's argument in this regard lacks merit. Initially, to the extent his arguments focus on the temporary award of sole physical and legal custody to Mother, that issue is technically moot. The temporary provision ended in February 2026, and this Court cannot enter an order that has any legal force or effect to undo that provision. *See E.B.*, 209 A.3d at 466-67. To the extent this Court may inquire further, our review confirms the trial court undertook the proper procedures and considered all statutory factors. *See C.H.L.*, 214 A.3d at 1280. In any event, the record supports the trial court's decision to reject Father's reasons for withholding Child from Mother, and Father's own

- 19 -

testimony belied his efforts to cast his withholding of Child from Mother as a "protective" measure. *See* N.T., 10/16/25, at 30-35, 128-29. The record contains ample support for the court's rejection of Father's testimony that he was simply acting in good faith to comply with prior court orders, including those entered upon Mother's PFA petition. *See also id*. at 122-23 (indicating continuing communications between Father and Mother about Child and suggesting Father would resume the prior shared physical custody arrangement if Mother dropped her PFA petition). To the extent Father contends Mother's alleged irresponsibility should have outweighed his withholding of Child from Mother, we discern no abuse of discretion in the trial court's balancing of all relevant evidence and custody factors. *See M.J.M.*, 63 A.3d at 339. Thus, Father's claims merit no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/13/2026